Spencer, J.
This record contains a number of cases tried together, and depending substantially upon the solution of the same questions.
In December, 1878, as by law required, the City Council adopted ordinance No. 4789, and an amendatory ordinance, No. 4820, imposing a license tax on “ each and every insurance company (life and accident insurance companies excepted) located and doing an insurance business in the city of New Orleans; every agency doing such business in said city for any insurance company or companies not therein located, for each and every company by said agent represented, one thousand dollars.
“ Every life insurance company or agency, and every accident insurance company or agency, five hundred dollars.”
These ordinances went, into effect on January 1, 1879, and were predicated upon and preceded by the annual estimate of expenses of 1879, required by law to be made. This estimate is by law made the basis of taxation for the ensuing year, and itself constitutes exclusively the appropriation bill of that year. In other" words, the city is required in November or December of each year to state and publish in detail *782 the purposes and amounts of money to be expended for the ensuing year, and then to impose licenses and taxes to an amount which will exceed that estimate by ten per cent.
See Act No: 7, sec. 19, extra session of 1870 ; sec: 14 of Act No. 78 of 1872 ; sec. 2 of Act 68 of 1877.
By another law the licenses so levied and assessed by the city were due and payable during all the months of January and February, and only became exigible by suit and with penalty from and after the first March of. each year;
On the ninth February, 1879, after a large number of insurance companies had paid the license so levied against them, the legislative act No. 27 of 1879 was passed and promulgated; the fifteenth paragraph of the first section of which enacts, “that there shall be collected from each agent or representative of an insurance company created by or under the laws of this State, and transacting an insurance business therein, one thousand' dollars; from each insurance company or agency not chartered by this State, but transacting business therein, one thousand dollars; provided, that no parish or municipal corporations throughout the State shall assess any license tax of ovér five hundred dollars on any such insurance company.” Acts 1879, No.’ 27, p. 42, sec. 1,115. ‘ .
All the defendants in these suits claim the benefit of the proviso in said act, and contend'that it repealed the ordinances of the city, imposing on them a greater license than $500 for the year 1879.
P. A. Barker and Messrs Welshans & Woods, who ara “Insurance agents,” each for several distinct foreign companies, claim, besides, that the ordinances of the city, in so fár as they are construed as levying a license tax of $1000 for each of their several companies, are illegal and unconstitutional, and. violative of the rules of uniformity and equality. .That.the. business,of “insurance agent” or solicitor is a known and recognized industry, and cannot be.subjected,to this tenfold taxation.
, The first question presented, therefore, for solution is whether the Act, 27 of 187p, which contains the usual repealing clause, had the effect to .repeal, and annul the ordinances-of the city imposing.and assessing licenses to mqet,the | estimated expenses of 1879. If .it did not have that effect, it will be .unnecessary for .us to go into the question of legislative power tq pass retroactive laws,, and other-.kindred questions so extensively discussed before us. 1
, ,, It ,i.s a .safe and long-established rule of interpretation that laws prescribe only for. the future. C, O. Art. 8.
. . And, it certainly-was,the.intention of the framers of the constitution of. 1868 to. at least-consecrate that rule, for it provides that “no re- . troactive.” law sh.all;,be passed- ..Constitution, art.liq. ; ■... ,
*783 With these provisions staring us in the face, we certainly would not toe justified in holding an act to have a retroactive effect unless its terms were so imperative and so explicit as to admit of no other construction, as seems to have been the case in Whited vs. Lewis, 25 A. p. 570.
Turning to the provisions of the act, we find that it is couched in terms prospective only. ■ It says, “ no parish or municipal corporation throughout the State shall assess any license tax over $500, etc ; ” that the act shall take effect “from and after its passage,” to wit, ninth February, 1879. Here, then, are no words looking to the past. Its operation is by its very terms for the future. It does not say that no corporation •or parish shall eollect a greater license, but that it shall not hereafter assess, i. e. levy, or impose a greater.
We have seen that the ordinances of the city imposing, assessing, these licenses were passed nearly two months before this act was passed. When we turn from the language of the act to the circumstances surrounding the legislature, it is rendered almost Certain 'that it was not the intention to give it the effect claimed by defendants. The city had made its estimates for 1879 ; had thereby made appropriations to meet the various debts and liabilities covered by its estimate; had, in fact, ■created liabilities and debts, all predicated- upon and to be paid out. of these licenses and taxes assessed and levied in December, 1878. On the faith of these prospective receipts it had employed laborers, police officers, etc. The law absolutely forbade that the expenses'should- exceed the revenues. Is it rational to suppose that under these circumstances the legislature intended to force the city administration into a violation of law, by cutting off its means and resources to meet its liabilities and thereby derange all its financial affairs ? ■
We think it more than probable that .the reason why the :amendment referred to by counsel,.as having been’offered pending the pas••sage of the bill, postponing its operation to December, 1879, was voted down, and another providing restitution to those who had already paid the license was dropped in the House, will be found in the view we have taken, to wit, that the act did not apply to municipal taxes already levied and assessed to meet debts and liabilities already in large part •contracted.
Judge Cooley in his Work on Taxation p. 221, thus states the rule applicable to this subject: “But there is commonlypresumption that any new tax-law was not intended to reach back and take for its standard of apportionment a state of things that may no longer be in existence. ” Taxation, p. 221.
Further writing on the.same subject, he pronounces that to be “the general rule of law which requires the courts to alwaxjs construe statutes *784 as prospective and not retrospective, unless constrained to the contrary cause by the vigor of the phraseology.”
In Oakland vs. Whipple, 44 Cal. 303, it was held: “ Where taxes are levied under a law which is repealed by a subsequent act, unless it appears clearly that the legislature intended the repeal to work retrospectively, it will be assumed that it intended the taxes to be collected according to the laws in force when they were levied.” See, also, City of New Orleans vs. Day, 29 A. 416.
Holding, therefore, that the act did not affect the city licenses, already imposed, we are spared the labor of discussing the questions of legislative power to do so.
P. A. Barker represents five foreign, fire insurance companies andi one life insurance company.
Welshans & Woods represents eight Similar fire insurance companies and one life insurance company.
We have seen that there is by the terms of the ordinances imposed as license on “ every agency doing insurance business in said city, for any insurance company or companies not therein Located, for each and every company by said agent represented * * * one thousand dollars.” In other words, it is on “ the agency” that the license is imposed, and that license is to be at the rate of $1000 for each company whose policies are sold or delivered by such agency. The license is not levied on the companies. They enter into the question only as an element of calculation, to measure the license to be paid by the agency. Such a rule of imposition is clearly in violation of the rule of equality and uniformity. See New Orleans vs. Home Insurance Co., 23 A. 449; State vs. Endam, 23 A. 664; Feliciana vs. Gurth, 26 A. 640; Cullinene vs. New Orleans, 28 A. 102; Police Jury vs. Nougues, 11 A. 739.
But aside from this view of the case it is alleged and shown by Barker and Welshans & Woods, that, in fact, they carry on the business of “ insurance agency; that they negotiate insurance upon commission, and to increase their incomes they procure authority from foreign companies to place risks for them, and that they solicit the patronage of persons desiring to insure; that they are under no obligation to solicit for any particular company, each company simply agreeing to accept such risks as they may place for them ; that this business is conducted in their own interest and behalf, they renting and furnishing their own offices and defraying all expenses out of their own means that the policies delivered are issued by the companies at the several places where they are domiciled, and that said companies have and keep-no offices here.
Under this state of facts it is manifest tnat the business carried on by these parties is a distinct, separate, and individual industry or occu *785 pation, and only taxable as such. There is no more reason for taxing them at the rate of $1000 for each company whose insurance they sell than there is for taxing that class of jobbers who make a business of selling the manufactures of foreign factories, at the rate of $1000 for each company whose goods they sell on commission. The principle is precisely the same. They are both agencies.'
But the business of Are and marine insurance is a distinct one from that of life insurance; so the business of “ life insurance agent ” is distinct from that of “ Are and marine agent.”
Where the same person follows two occupations, recognized in commerce as separate, and taxed and classed distinctively by law, he must pay a license for each. See “ City of New Orleans vs. Metropolitan Loan and Pledge Bank,” lately decided and not yet reported.
On the question of interest, the ninth section of Art. No. 48 of 1871 and act 41 of 1874 provide in effect that “ all taxes imposed by the city of New Orleans ” shall bear ten per cent interest from Arst March of each year.
We regard the terms “ all taxes imposed ” as generic, and as covering license taxes levied for revenue.
No judgment can be given against those companies represented by* P. A. Barker and Welshans & Woods. Nor can we render judgments against Barker and Welshans & Woods for licenses due by them as conducting agencies, since personally they are not sued. Barker is liable to the city for a license of $1000 for his Are insurance agency and of $500 for his life insurance agency; and Welshans & Woods for like amounts. We reserve the rights of the city to claim these licenses from said parties in proceedings to be brought against them personally
It is, therefore, ordered, adjudged, and decreed that the judgments appealed frpm be avoided and reversed, and plaintiff’s demand rejected at its costs in the following eases : City of New Orleans vs.
No. 50,048, Continental Insurance Company.
No. 50,049, Hartford Fire Insurance Company.
Ño. 50,051, Home Fire Insurance Company.
No. 50,052, Ætna Insurance Company.
No. 50,053, Franklin Fire Insurance Company.
No. 50,110, Mass. Mutual Life Insurance Company.
No. 50,061, Mercantile Mutual Insurance Company.
No. 50,062, Queen Insurance Company.
No. 50, 063, German American Insurance Company.
No. 50,064, Boyal Insurance Company.
No. 50,065 Manhattan Fire Insurance Company.
No. 50,060, Commercial Union Assurance Company.
No. 50,059, New York Underwriters’ Agency.
*786 No. 50,078, Fire Association o£ Philadelphia.
No. 50,109, Equitable Life Assurance Company.
It is further decreed that the judgments appealed from be affirmed at costs of appellants in the following cases ;
No. 50,050, New Orleans vs. Rhenish Westfalian Lloyds.
No. 50,016, New Orleans vs. Imperial and Northwestern Fire Insurance Companies.
No. 50,072, New Orleans vs Western Assurance Company.
No. 50,058, New Orleans vs. Great Western Insurance Company.